UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
DEC 3 1 2014
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COLTON POORMAN,<br><br>Defendant. | 3:14-CR-30101-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS |

## SUMMARY

A nine-year-old girl divulged that Colton Poorman inappropriately kissed her on the lips and touched her breasts and buttocks. Poorman was questioned about this and made statements which he seeks to suppress under the Fifth Amendment. Because the statements were made voluntarily and without undue coercion, the Court recommends the suppression motion be denied.

## BACKGROUND

Some time prior to August 18, 2014, M.K.I.W., a pre-pubescent female child, was examined at the Child Assessment Center in Pierre, South Dakota. There she reported going with Poorman, and another younger girl, C.K.W., to ride horses near the Spring Creek School on the Rosebud Indian Reservation. According to M.K.I.W., Poorman (1)

kissed her and tried to put his tongue inside her mouth while doing so; and (2) touched her breasts and buttocks over her clothing. She recalled smelling beer on his breath at the time and conveyed how she did not like what he did to her and cried.

On August 18, 2014, FBI Special Agent Oscar Ramirez and Mark Kettell, a special agent with the Rosebud Sioux Tribe Law Enforcement Services, interviewed Poorman in a room at the Rosebud jail. The interview began at 11:40 a.m., lasted about two hours and was videotaped. Poorman, who was in tribal custody at the time, was advised of his *Miranda* rights, said he understood these rights and signed a written waiver of them.

Poorman initially denied having any physical contact with M.K.I.W. He said he took her behind the Spring Creek school to look for horses to ride, but changed his mind and told her he was going to drink beer instead. Slowly, but eventually, he admitted to hugging M.K.I.W., kissing her on the lips, brushing up against her breasts and perhaps touching her buttocks, although he could not remember doing the latter. For a while, he maintained he did these things to let M.K.I.W. know he appreciated her and to show his affection, but ultimately he acknowledged the touching was for romantic and sexual reasons.

Approximately a month later, Poorman was charged by federal indictment with abusive sexual contact in violation of 18 U.S.C. §§1153, 2244(a)(5), 2241(c) and 2246(3). He subsequently moved to suppress his August 18 statements. After receiving the Government's resistance to the motion, the Court held a hearing at which it heard testimony from Agent Ramirez and received documentary evidence.

2

## VOLUNTARINESS

Poorman claims his statements to Agents Ramirez and Kettell were involuntary. He argues his will was overborne and his Fifth Amendment rights were violated by the manner and length of the interrogation and Agent Ramirez's false promises, deception and misrepresentations. He seeks suppression of all these statements, presumably as both substantive and impeachment evidence.

At the outset, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare."[1] That is not to say compliance with *Miranda* conclusively establishes the voluntariness of later made statements.[2] Poorman's *Miranda* advisements though make it much more difficult for him to rebut the Government's assertion that his statements to Agents Ramirez and Kettell were voluntary.

Due process requires guilt-laden statements or "confessions" be voluntary.[3] A statement is voluntary if it is "the product of an essentially free and unconstrained

---

[1] *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)).

[2] *See Berkemer*, 468 U.S. at 433, n. 20.

[3] *See Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process).

choice by its maker."[4] Conversely, "[a] statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear [the suspect's] will and critically impair his capacity for self-determination."[5]

The totality of the circumstances must be considered when determining whether statements were made voluntarily.[6] When doing so, a court must focus on two factors: the conduct of the agents and the characteristics of the suspect.[7] The Government bears the burden of persuasion and must prove, by a preponderance of the evidence, the challenged statements were voluntary.[8]

Having watched the video recording of the interview, considered all of the sights and sounds on it and weighed Agent Ramirez's testimony, the Court concludes the requisite coercive or overreaching conduct necessary to render Poorman's statements involuntary is lacking. Several facts support this conclusion.

At no time did Agents Ramirez or Kettell threaten or intimidate Poorman or yell, raise their voices or become hostile toward him. Nor did they use any force, employ physical punishment or brandish their weapons to get him to talk. Poorman's age,

---

[4] *Schneckloth*, 412 U.S. at 225.

[5] *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

[6] *See id.* at 727.

[7] *Id.* at 724.

[8] *See id.*

education, background and conduct that day do not indicate he was low functioning or particularly suggestible and vulnerable to questioning by authority figures (i.e., could be talked into anything). His responses to inquiries also convincingly showed he was not under the influence of alcohol or drugs and not suffering from any mental or physical afflictions. And he shook Agent Ramirez's hand three different times and cooperated with agents, being careful and deliberate about what he would unveil.

After about 45 minutes or so had elapsed, the tone of the interview changed. It became much more accusatory and Agent Ramirez began using deception and other stratagems to get Poorman to admit to kissing and to touching, in a sexual way, M.K.I.W.'s breasts and buttocks. Agent Ramirez acknowledged he employed covinous tactics during the interview, telling Poorman things that were not true in hopes of getting him to confess to some kind of sexual contact.

Officers elicit confessions through a variety of modes, including claiming not to believe a suspect's explanations, making false promises, playing on the suspect's emotions, deceiving the suspect and acting sympathetic.[9] None of these devices, however, render a confession involuntary unless "the overall impact of the interrogation caused [the suspect's] will to be overborne."[10]

---

[9] See *United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *United States v. Astello*, 241 F.3d 965, 967-68.

[10] *Brave Heart*, 397 F.3d at 1041 (quoting *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir.), cert. denied, 510 U.S. 822 (1993)).

5

Although not a sophisticated man, Poorman was 34 years old at the time, had completed the 11th grade, had prior experience with the criminal justice system and did not have any difficulty understanding the questions put to him.[11] He was willing to implicate himself and corroborate at least some of what M.K.I.W. But he would not admit to everything Agent Ramirez wanted -- such as for sure touching her buttocks – equivocating in varying degrees as to what he did and would own up to. Given the circumstances and, in particular, the stigmatizing nature of the allegations and his penal knowledge, it is understandable why he chose to do this.

The gravity of the deception Poorman complains of is not as sinister as he holds it out to be. Granted, Agent Ramirez did comment to Poorman that "[t]he truth will set you free."[12] But then, right away, Agent Ramirez added this: "It'll set you free, not in the fact that nothing's going to happen to you. I can't say that. We don't know that. But it will set you free with your mind."[13] It is likewise true Agent Ramirez said, "Everything you're telling me stays here."[14] He made clear though this only meant he would not go to or tell Poorman's family anything and would have to forward whatever Poorman said to the United States Attorney's Office which, in turn, would

---

[11] *See Brave Heart*, 397 F.3d at 1041.

[12] Mot. Hrg. Ex. 1, DVD #2, second track at 4 (Dec. 11, 2014).

[13] *Id.*

[14] *Id.* at 5.

6

decide what to do.[15] While Agent Ramirez did lead Poorman to believe there was a witness (C.K.W.) who could confirm M.K.I.W.'s story, Agent Ramirez did, at the same time, comment "she can't say much" and would only be able to relate what "she kinda remembers happening."[16] In any event, Poorman knew C.K.W. was a witness because she was with he and M.K.I.W. when the alleged sexual contact took place. Finally, being informed there was "no doubt" he had sexual contact with M.K.I.W. and there was a "case" the FBI had against him, unless he told his "side of the story,"[17] did not immediately produce inculpations from Poorman – but rather a question ("What's sexual contact?").[18] This question interrupted what Agent Ramirez would have finished saying, namely, "all I have is her side of the story."[19] More importantly, Agent Ramirez's remarks did not break down Poorman's ability to resist pressure or to minimize what he did.[20]

Regardless, even in the face of Agent Ramirez's artifices and persuasive machinations, Poorman stopped short, on his own, of making a full confession. The

---

[15] *Id.*, first track at 40-41; second track at 5, 14, 35-36.

[16] *Id.*, first track at 35, 38.

[17] *Id.* at 33, 39.

[18] *Id.*, at 39.

[19] Mot. Hrg. Tr. 29 (Dec. 11, 2014).

[20] Mot. Hrg. Ex. 1, DVD #2; first track at 33-41; second track at 1, 6, 10-12, 15-16, 22-32.

record as a whole demonstrates Poorman confessed because his conscience prevailed upon him to do so, and not because the environment and nature of the questioning was so coercive that it overbore his will and piercingly impaired his decision making capacity.[21] Poorman was advised of all of his rights, waived them and made unconstrained statements to agents, who collectively took no action that could reasonably be considered as subjugation, compulsion or duress. The Government has thus sustained its burden of proving that Poorman's statements were voluntary for purposes of the Fifth Amendment. This being the case, he cannot succeed on his suppression motion.

## CONCLUSION

Agents did not violate Poorman's Fifth Amendment rights so as to require the suppression of his statements. He willingly talked to and shared information with agents while being interviewed. Despite the psychological ploys used to get Poorman to incriminate himself, agents did not prevail upon his will and acutely disable his

---

[21] *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *Brave Heart*, 397 F.3d at 1041; *United States v. Petary*, 857 F.2d 458, 460-61 (8th Cir. 1988); *see also Oregon v. Elstad*, 470 U.S. 298, 317 (1985); *United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011); *United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011); *United States v. Crow Dog*, CR. 12-30034(02)-RAL, 2012 WL 3020068 at **2-3 (D.S.D. June 12, 2012), *report and recommendation adopted*, 2012 WL 3023219 (D.S.D. July 24, 2012); *United States v. Yazzie*, CR. 10-30050-RAL, 2011 WL 590112 at*8 (D.S.D. Jan. 25, 2011), *report and recommendation adopted*, 2011 WL 500004 (D.S.D. Feb. 10, 2011); *see generally* Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.2(c) nn. 107, 117-54 (3d ed. 2007 & 2013-14 Supp.).

decision-making faculties. Poorman's statements, therefore, were voluntary and are freely admissible at trial.

## RECOMMENDATION

It is hereby

RECOMMENDED that Poorman's Motion to Suppress Statements[22] be denied for the reasons, and based on the authorities, stated herein.

## NOTICE

An aggrieved party has 14 calendar days after service of this report and recommendation to file written objections to the same,[23] unless an extension of time for cause is obtained.[24] Failure to file timely objections will result in the waiver of the right to appeal questions of fact.[25] Objections must "identify[ ] those issues on which further review is desired[.]"[26]

---

[22] *See* Dkt. No. 24.

[23] *See 28 U.S.C.* §636(b)(1); Fed. R. Civ. P. 72(b).

[24]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[25]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[26]*Arn*, 474 U.S. at 155.

DATED this 31st day of December, 2014.

                                **BY THE COURT:**

                                */s/ Mark A. Moreno*

                                **MARK A. MORENO**
                                **UNITED STATES MAGISTRATE JUDGE**